**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Melissa Garza, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 22 CV 3098 |
| v. | Judge Lindsay C. Jenkins |
| Nestle USA, Inc., *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION AND ORDER**

Melissa Garza brings this putative class action against Gerber Products Co. based on allegedly deceptive labeling of Good Start Grow, a milk-based drink powder for toddlers. [Dkt. 6.][1] Before the Court is Gerber's motion to dismiss for failure to state a claim and for lack of standing. [Dkt. 15.] As explained below, the Court agrees that Garza's complaint must be dismissed, but it does for a different jurisdictional reason: The aggregate amount in controversy does not exceed $5 million, as required by 28 U.S.C. § 1332(d)(2).

**I.    Background**

The Court takes Garza's well-pleaded factual allegations as true for purposes of ruling on Gerber's motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). This case concerns Good Start Grow, a milk-based powder for toddlers aged 12–24 months that Gerber sells. [Dkt. 6 ¶ 13.] Toddler milks like Good Start Grow are allegedly nutritionally inappropriate because they contain large

---

[1]    Garza initially named Nestle USA, Inc. as the defendant, but the Court granted her motion to file an amended complaint substituting Gerber as the defendant. [Dkt. 4; Dkt. 5.]

1

amounts of added sugars. [*See id.* ¶¶ 7–8, 21–24.] It is preferable for toddlers to drink whole cow's milk, which is less expensive and more nutritious than Good Start Grow. [*See id.* ¶¶ 25–28.] But Gerber allegedly markets Good Start Grow to appear similar to Good Start GentlePro, Gerber's milk-based powder formula for infants aged 0–12 months. [*Id.* ¶ 13.] While infant formula is regulated by the Food and Drug Administration, toddler milks are not. [*See id.* ¶¶ 3, 12.] Garza alleges that Gerber's deceptive labeling causes customers to mistakenly believe Good Start Grow is federally approved and regulated like infant formula and to believe Good Start Grow provides toddlers with needed nutrients. [*See id.* ¶¶ 12–20, 29–32.]

Garza is Illinois citizen who purchased Good Start Grow. [*Id.* ¶¶ 45, 51.] She filed this putative class action against Gerber, seeking damages and injunctive relief. [*Id.* at 17–18.] She hopes to represent two classes, an Illinois Class and a Consumer Fraud Multi-State Class, comprising purchasers from Arkansas, Iowa, North Dakota, Utah, and Wyoming. [*Id.* ¶ 61.] Garza alleges that Gerber violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; other states' consumer fraud statutes; and the Magnusson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* She also brings claims for negligent misrepresentation, common law fraud, and unjust enrichment. [Dkt. 6 ¶¶ 69–106.] Gerber moves to dismiss Garza's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that Garza's claims fail on the merits and that she lacks standing in part, including as to her request for injunctive relief. [Dkt. 15.]

## II. Legal Standards

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023). The Court also has an independent obligation to determine whether it has subject-matter jurisdiction, even if the parties do not call jurisdictional issues to the Court's attention. *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021).

## III. Analysis

The Court begins and ends with a jurisdictional question it raised on its own motion: whether Garza has properly invoked this Court's jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Subject to exceptions not relevant here, *see* § 1332(d)(3)–(4), CAFA vests the Court with jurisdiction over class actions with minimal diversity of citizenship and an aggregate amount in controversy of over $5 million, § 1332(d)(2), (6); *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 853–54 (7th Cir. 2021). Gerber did not contest the Court's jurisdiction on amount-in-controversy grounds, but the Court ordered briefing on this subject and offered Garza the opportunity to amend her complaint, which she declined. [Dkt. 30; Dkt. 31.] Garza alleges the requisite amount in controversy—more than $5 million, in the aggregate [Dkt. 6 ¶ 38]—and ordinarily the Court would not question the sufficiency of jurisdictional allegations in the absence of a challenge by the defendant,

3

but the Court has "reason to doubt the sufficiency" of her allegations, *Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (internal quotation omitted). When the Court takes a closer look at Garza's allegations, it finds that jurisdiction is absent.

### A. The Multi-State Class

Garza purports to represent two separate classes, an Illinois Class and a Multi-State Class, but she is not a member of the latter class, which consists of "persons in the States of Iowa, Arkansas, Wyoming, North Dakota, and Utah." [Dkt. 6 ¶ 61.] This is a problem because Rule 23(a) only permits "[o]ne or more members of a class" to sue on behalf of that class, and Rule 23's definitions of "class" and "class action" govern CAFA cases, *see* 28 U.S.C. § 1332(d)(1)(A)–(B). Under the "legal certainty" test of *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), if recovering certain damages would be legally impossible, then those damages do not count toward satisfying a jurisdictional minimum, *see, e.g.*, *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011). Because Garza cannot represent the Multi-State Class, it is legally certain that if she remains the sole named plaintiff, the Multi-State Class cannot recover. Thus, the value of class members' claims cannot be aggregated for purposes of meeting the requisite $5 million amount in controversy. *See id.*

While conceding that she is not a member of the Multi-State Class as she has defined it, Garza argues that the issue of whether she can represent that class should be deferred until the class certification stage. [Dkt. 31 at 4–6.] She cites well-reasoned opinions from other courts in this district in support of that proposition, but while these opinions are persuasive, they address different issues. *See Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859–62 (N.D. Ill. 2021) (standing and personal

4

jurisdiction); *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, at *3–4 (N.D. Ill. Sept. 6, 2017) (standing and Rule 23 requirements); *In re Herbal Supplements Mktg. & Sales Prac. Litig.*, 2017 WL 2215025, at *6–7 (N.D. Ill. May 19, 2017) (standing). Garza and other class members who she alleges have been injured have Article III standing as to their damages claims, *see Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011), and personal jurisdiction over class members and whether the requirements for class certification have been met are issues properly addressed at a later stage. But none of the opinions Garza cites addressed the issue of the amount in controversy, and the plaintiffs those cases pursued nationwide classes, making it easier to meet the $5 million aggregate requirement. *See Freeman*, 528 F. Supp. 3d at 853 n.2 (expressly noting that the court had jurisdiction under CAFA in part because of the large class size).[2]

These distinctions matter. Limitations Congress sets on federal subject-matter jurisdiction bind this Court just as strongly as limitations that derive from Article III of the Constitution, and Congress has limited CAFA jurisdiction to cases where more than $5 million is in controversy. *Schutte*, 28 F.4th at 854. Because the Court has doubts about whether jurisdiction exists, it has an obligation to determine whether the requisite amount is in controversy. *See Sykes*, 72 F.4th at 206. If Garza had included Illinois persons in her Multi-State Class, she would be entitled to aggregate the value of the claims of that class's members for purposes of satisfying the amount

---

[2] Further, at least one multi-state class included persons from Illinois in its class definition, which Garza's Multi-State Class does not. *See Block*, 2017 WL 3895565, at *1–2.

5

in controversy, even if she ultimately could not represent them as a matter of substantive law or class certification rules. *See Freeman*, 528 F. Supp. 3d at 859; *cf. Morrison*, 649 F.3d at 536. But Rule 23(a) limits possible class representatives to members of the class, so it is legally certain that Garza cannot represent or recover damages on behalf of the Multi-State Class, and therefore she cannot aggregate the claims of that class for amount-in-controversy purposes. *See Carroll*, 658 F.3d at 681. Recognizing that fact does not equate to determining "the propriety of class certification … right out of the box by an overbroad application of Article III standing to proposed class actions," *Freeman*, 528 F. Supp. 3d at 859—it means respecting the statutory bounds of the Court's subject-matter jurisdiction. Garza must attempt to satisfy the amount in controversy based on the Illinois Class's claims alone.

### B. The Illinois Class

Garza argues she can do just that. Her supplemental brief elaborates on how she reached the conclusion that over $5 million is in controversy from the Illinois Class alone. [Dkt. 31 at 2–4.] Gerber did not file a response to Garza's jurisdictional brief, so the Court views her allegations "in the light most favorable to finding jurisdiction." *Sykes*, 72 F.4th at 206 (citations omitted). But even under this lenient standard, it is legally certain that the amount in controversy does not exceed $5 million, so the Court lacks subject-matter jurisdiction. *See Schutte*, 28 F.4th at 854.

#### 1. Injunctive Relief

The Court first addresses whether Garza's request for injunctive relief can help her meet the amount-in-controversy requirement. The injunction she seeks would require a nationwide recall and relabeling of Good Start Grow, which she estimates

6

constitutes about $27 million in yearly revenue. [Dkt. 31 at 3–4.] Since Gerber has not contested these allegations, the Court will accept that the cost of compliance would exceed $5 million. If injunctive relief contributes to the amount in controversy, then the Court has jurisdiction. *See Sykes*, 72 F.4th at 206 (explaining that the amount-in-controversy requirement is met if the defendant's cost of complying may exceed the jurisdictional minimum). The problem for Garza is that, as Gerber argues, she lacks Article III standing to pursue this injunction. [Dkt. 15-1 at 13–14.]

Under the familiar standing test, Garza must show that (1) "[s]he suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was likely caused by [Gerber]"; and (3) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). When a plaintiff seeks injunctive relief, she must "demonstrate that [s]he faces a real and immediate threat of future injury; a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (cleaned up). A named plaintiff in a putative class action cannot rely on the likelihood of injury to other class members for standing to seek injunctive relief—she must be subject to an imminent injury herself. *Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004).

The prospective relief Garza seeks is for the Court to direct Gerber "to correct the challenged practices to comply with the law" and "to remove, correct and/or refrain from the challenged practices and representations." [Dkt. 6 at 17–18.] For Garza to have standing to seek such relief, she must be at an imminent risk of future

7

harm from Gerber's alleged misrepresentations, and the relief she seeks must redress that injury. *See TransUnion*, 141 S. Ct. at 2203. She fails at all levels.

Seventh Circuit precedent holds that she does not face a sufficient risk of injury because she knows about Gerber's alleged deceptive practice, so even if it continues, she is unlikely to be harmed by it. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014). Garza attempts to distinguish *Camasta* by pointing out that she alleged that she "is unable to rely on the labeling and representations not only of [Good Start Grow], but other similar infant formulas, because she is unsure whether those representations are truthful." [Dkt. 6 ¶ 60; Dkt. 20 at 16.][3] Here too, Garza runs headlong into binding precedent. Her injury must be traceable to Gerber's conduct for her to have standing, *TransUnion*, 141 S. Ct. at 2203, so the conduct of makers of other products is irrelevant. Further, confusion and worry are not injuries for Article III purposes, even if they induce a plaintiff to hire a lawyer or lose sleep. *Choice*, 77 F.4th at 639–40. If causing a plaintiff to lose sleep or incur the expense of hiring a lawyer does not confer standing, then a confusing product label that may necessitate further research does not either. Garza also has a redressability problem. She now knows the truth about Good Start Grow, so a judicial decision requiring accurate labeling would not benefit her. *See TransUnion*, 141 S. Ct. at 2203; *Camasta*, 761 F.3d at 741. For these reasons, Garza lacks standing to seek injunctive relief.

---

[3] The Court assumes "similar infant formulas" should instead refer to toddler milks because Garza's case hinges on Gerber's deceptive practices regarding its toddler milk. If she in fact intends to refer to infant formulas, her desire to purchase that product cannot support her standing to seek an injunction to correct Good Start Grow's allegedly deceptive labeling.

Garza's lack of standing also means she cannot rely on the cost of complying with an injunction to satisfy the $5 million amount in controversy. A plaintiff who lacks standing cannot receive an injunction, so it is legally certain that Gerber's cost of compliance will be $0. *See Sykes*, 72 F.4th at 206.

### 2. Damages

Because Garza's claim for injunctive relief cannot help clear the jurisdictional threshold, the Illinois Class's damages alone must aggregate to more than $5 million. Garza estimates that Gerber's total revenue from selling Good Start Grow in Illinois during the longest relevant limitations period—five years for common law fraud, *see Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 14 (Ill. 2016))—"slightly exceed[s] $5.1 million" [Dkt. 31 at 3–4]. Gerber does not contest these allegations, and the Court accepts them as true. *See Sykes*, 72 F.4th at 206. But just because Gerber's revenue from Good Start Grow may have exceeded $5 million during the limitations period does not establish that the amount in controversy exceeds $5 million. In fact, reading Garza's allegations in light of Illinois law establishes that it is legally impossible for the class to recover $5 million in the aggregate.

Garza seeks damages only for economic injuries, and while she seeks punitive damages and interest, neither is relevant. CAFA's $5 million amount-in-controversy requirement excludes interest and costs, 28 U.S.C. § 1332(d)(2), and Garza requests punitive damages only with respect to the Multi-State Class's claims [Dkt. 6 ¶ 79], the value of which she cannot rely on to meet the jurisdictional threshold. Simplifying matters further, Illinois law bars a plaintiff from recovering twice for the same injury, *see Ill. Sch. Dist. Agency v. Pac. Ins. Co.*, 571 F.3d 611, 615–16 (7th Cir. 2009), so all

9

of Garza's causes of action can be considered at once: to the extent the class recovers under one legal theory, it cannot recover for the same injury under another theory.[4] Thus, the question is whether the Illinois Class's actual aggregate actual damages can, as a matter of law, exceed $5 million. *See Sykes*, 72 F.4th at 205.[5]

Such a recovery would be impossible. Each of Garza's legal theories limits the class's possible recovery to the price paid minus the value received. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405–06 (7th Cir. 2003) (MMWA); *Seiden L. Grp., P.C. v. Segal*, 202 N.E.3d 343, 356–57 (Ill. Ct. App. 2021) (unjust enrichment); *Burkhart v. Wolf Motors of Naperville ex rel. Toyota of Naperville*, 61 N.E.3d 1155, 1161 (Ill. Ct. App. 2016) (ICFA); *Lake Cnty. Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.*, 589 N.E.2d 1128, 1130 (Ill. Ct. App. 1992) (negligent misrepresentation); *Forrester v. State Bank of E. Moline*, 363 N.E.2d 904, 909 (Ill. Ct. App. 1977) (common law fraud). To meet the amount-in-controversy requirement, the class would have to recover approximately 98% of the $5.1 million sales of Good Start Grow. That is possible only if the product is virtually worthless.

Garza's complaint pleads that Good Start Grow is not worthless. She never alleges it is worthless; instead, she alleges it is worth *less* than class members paid for it or that they would have not purchased the product or would have *paid less* had

---

[4] The MMWA claim arises under federal law, but that doesn't change the analysis because Illinois law would bar recovery on state law claims to the extent the class recovers for the same injury on its federal claim. *See Ill. Sch. Dist.*, 571 F.3d at 615–16.

[5] Garza's complaint also alleges she is entitled to statutory damages [Dkt. 6 at 18], but her jurisdictional brief does not discuss statutory damages [*see* Dkt. 31]. Garza has therefore waived any argument that the class is entitled to statutory damages in excess of actual damages. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022).

they known the truth about it. [*See* Dkt. 6 ¶¶ 35, 56, 58, 74, 94, 101.] Similarly, Garza alleges that Good Start Grow is nutritionally inferior to cow's milk and is not nutritionally appropriate, but she does not allege it has no nutritional value. Indeed, without alleging that Gerber should change its nutritional composition, Garza "intends to, seeks to, and will purchase [Good Start Grow] again when she can do so with the assurance that Product's representations about its adequacy, components and ingredients are consistent with its representations." [*Id.* ¶ 59.] That allegation is a judicial admission that the Court can hold against her, *see Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022), and it proves that Good Start Grow has value.

As a result, the Illinois Class's claims cannot aggregate to over $5 million. If Good Start Grow is only worth 25% of the price Gerber sells it for [*see* Dkt. 6 ¶ 28 (alleging that Good Start Grow costs four times as much as whole cow's milk, the nutritionally superior product Garza compares it to)], the class could recover at most $3.825 million in damages, more than $1 million below the jurisdictional minimum. That figure might not be exactly correct, but it is so far below the requisite $5 million, the Court is satisfied that no legally permissible measure of damages could result in an aggregate amount in controversy of over $5 million for the Illinois Class alone. *See Sykes*, 72 F.4th at 214–16 (analyzing the applicable damages law and concluding that the requisite amount in controversy was absent). [*Cf.* Dkt. 31 at 2–4 (supplying no authority or argument for the class's ability to recover the full amount of Good Start Grow's revenue as damages).] Therefore, the Court lacks subject-matter jurisdiction over this case. *Schutte*, 28 F.4th at 854.

11

## IV. Conclusion

For the foregoing reasons, the Court dismisses Garza's amended complaint [Dkt. 6] without prejudice for lack of subject-matter jurisdiction. Garza has amended her complaint once and will be given leave to amend one more time. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). The Court has not ruled on the bulk of Gerber's motion to dismiss, but Garza has the benefit of that fully briefed motion to review. To the extent that Garza wishes to plead additional facts or amend her class allegations, she must do so now. She should not expect a third opportunity to amend.

Enter: 22-cv-3098
Date: September 20, 2023

_____
Lindsay C. Jenkins
United States District Judge